UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHELETHA HILL,

                              Plaintiff,

        -against-                                        1:25-CV-4588 (LTS)

(NYCHA) NEW YORK CITY HOUSING                            ORDER TO AMEND
AUTHORITY MANAGED JACOB RIIS
HOUSES, et al.

                              Defendants.

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Sheletha Hill, who is appearing *pro se*, filed this action invoking the court's

federal question jurisdiction, asserting violations of her "right to live in a safe healthy home, . . .

right to use water that [is] clean and safe, [and her] right to breathe clean air within [her]

apartment," and asks that, "as a resident who is disabled medically and under disability law[,]

[for the Court to] [a]ccept notice of [her] claim[s] for all questions." (ECF 1, at 2.) The complaint

does not specify the relief that Plaintiff seeks. Plaintiff sues: (1) "(NYCHA) New York City

Housing Authority Managed Jacob Riis Houses," which the Court construes as the New York

City Housing Authority ("NYCHA")[1]; (2) the New York City Department of Housing

Preservation and Development ("HPD"); (3) Larissa Ilboudo-Kakou, the Manager of the Jacob

Riis Houses, which is the NYCHA-owned and operated apartment complex where Plaintiff

resides; (4) Paula Davenport, a Neighborhood Administrator employed by either NYCHA or the

City of New York; (5) Felipe Sanchez, the Superintendent of the Jacob Riis Houses; (6) Daniel

Green (or Greene), NYCHA's Executive Vice President of Property Management, Operations,

---

[1] A NYCHA subdivision is not a suable entity. *See Kingsley v. N.Y.C. Hous. Auth.
(NYCHA)*, No. 1:16-CV-0169 (KPF), 2016 WL 5939359, at *5 (S.D.N.Y. Oct. 6, 2016).

and Programs; (7) Brian Honon, NYCHA's Executive Vice President of Intergovernmental Affairs (or Intergovernmental Relations); (8) Daisy Lopez, NYCHA's Assistant Director in charge of Applications and Tenancy Administration; (9) Inspector J. Shelton, of the HPD's Manhattan Code Enforcement Unit; (10) Trina Meikle, NYCHA's Senior Counsel and Manhattan Borough Supervisor; (11) unidentified NYCHA "Jacob Riis Houses/Skilled Trades Carpenters, Glaciers, Maintenance [employees] who close out ticket work orders"; and (12) Lisa Bova-Hiatt, NYCHA's Chief Executive Officer.

The Court construes Plaintiff's complaint and supplements as asserting claims of federal constitutional violations under 42 U.S.C. § 1983; claims of disability discrimination under the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act of 1990 ("ADA"), and the Fair Housing Act ("FHA"); as well as claims under state law.

By order dated June 4, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order, and the Court denies Plaintiff's application for the court to request *pro bono* counsel without prejudice to Plaintiff's filing another such application at a later stage of the litigation.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

2

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## BACKGROUND

The complaint's statement of claim does not allege facts but refers to the 714 pages of documents that are attached to Plaintiff's eight-page complaint. (ECF 1.) Those attachments include copies of letters; emails; text messages; photographs; mobile-phone screenshots; inspection reports; submissions filed with, and orders issued from, the New York City Civil Court, Housing Part, New York County ("Housing Court"); and other documents recounting

Plaintiff's dispute with NYCHA regarding the conditions of the NYCHA-owned apartment and building in which Plaintiff resides, which are located in the Jacob Riis Houses. (*Id.*) Plaintiff has also filed an application for the court to request *pro bono* counsel to which she attaches a document that recounts her dispute with NYCHA. (ECF 6.) In addition, Plaintiff has filed multiple letters—some that are, with attachments, over 100 pages long—most of which include the same type of documents that are attached to the complaint. (ECF 7-16.) The Court construes all of these submissions as supplements to Plaintiff's complaint.[2]

The Court has gleaned the following from all of these submissions: Plaintiff is a tenant residing in an apartment in the NYCHA-owned and operated Jacob Riis Houses, an apartment-building complex located in New York, New York. Since approximately 2019, and continuing to the present, Plaintiff has found multiple problems within her apartment and her building that require repair, including, but not limited to: (1) the continued presence of mold and mildew in her apartment due to water leaks and the presence of other moisture; (2) discolored drinking and bathing water; (3) the presence of asbestos; (4) cracks and separations in the walls and/or ceiling of her apartment; and (5) a building elevator that often is out of service. Plaintiff suffers from multiple disabilities, including but not limited to asthma, which the presence of mold and mildew in her apartment has exacerbated, as well as back pain caused by spinal issues, which requires a

---

[2] Under Rule 5.2(a)(2) of the Federal Rules of Civil Procedure, a court filing that reveals a person's birth date may only do so by referring to the person's birth year. Fed. R. Civ. P. 5.2(a)(2). In attachments to her complaint (ECF 1-7), and to two of her letters (ECF 11, 12), Plaintiff reveals her own complete birth date and the complete birth date of another person. While Plaintiff waives the protection of the abovementioned rule as to her own information if such information is filed without redaction and not under seal, *see* Fed. R. Civ. P. 5.2(h), that waiver does not apply to the information of another person who has not filed a submission in this action, *see* Fed. R. Civ. P. 5.2(a). Accordingly, in an abundance of caution, the Court has directed the Clerk of Court to restrict electronic access to that portion of the complaint and to those letters that include that other person's complete birth date.

4

grip bar or bars to be mounted near the toilet in her bathroom and, if her building elevator is not functioning reliably, a physical transfer to a first-floor apartment.

Plaintiff has alerted her building officials, NYCHA executive officials, politicians, and others to the need for these issues to be addressed. NYCHA officials, on multiple occasions, have attempted to repair or otherwise address these issues. These measures have sometimes required Plaintiff to be temporarily transferred to another apartment or placed in a hotel while the repairs are being made or while the other issues are being addressed. But because these repairs and attempts to address these issues have been inadequate, the conditions have reoccurred; for example, the mold and mildew persist because the leaks and other moisture have returned or have not been properly addressed, and the building elevator is still unreliable.

Plaintiff was, at one point, a recipient of Section 8 housing subsidy benefits, but they were canceled because she fell into rent arrears. Those arrears were later paid, however, via a governmental program, but it seems that Plaintiff's Section 8 benefits were not restored.

Plaintiff filed a lawsuit against NYCHA in the Housing Court to require NYCHA to address the abovementioned apartment/building-condition issues. This has resulted in that court ordering NYCHA to correct many, if not all, of those issues. In addition, that court has found NYCHA in contempt of that court's order(s) to correct those issues, and has granted Plaintiff rent abatements, which NYCHA has not applied to the rent Plaintiff owes. Plaintiff has accused NYCHA officials, including at least some of the named individual defendants, of perjuring themselves in what may be a pending Housing Court matter.

## DISCUSSION

### A.    Private prosecution

To the extent that Plaintiff seeks the criminal prosecution of any of the defendants, or anyone else, including any of the defendants that she accuses of perjuring themselves, the Court

5

must dismiss such claims. Plaintiff cannot initiate a criminal prosecution in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against anyone because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the federal criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the Court dismisses, for lack of subject matter jurisdiction, any claims in which Plaintiff seeks the federal criminal prosecution of anyone, including any of the defendants, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [her] claim." (internal quotation marks and citation omitted)).

**B.      Claims under 42 U.S.C. § 1983 with respect to safe and sanitary housing**

The Court understands Plaintiff's complaint as asserting claims, under 42 U.S.C. § 1983, that the defendants have violated Plaintiff's purported federal constitutional right to be provided with safe and sanitary housing. While the Court empathizes with Plaintiff's current circumstances, there is no right, under the United States Constitution, to be provided with safe and sanitary housing. *See generally Lindsey v. Normet*, 405 U.S. 56, 74 (1972) ("We do not denigrate the importance of decent, safe, and sanitary housing. But the Constitution does not provide judicial remedies for every social and economic ill. We are unable to perceive in that document any constitutional guarantee of access to dwellings of a particular quality. . . ."). No governmental entity or officer has any "obligation to provide adequate housing" under the federal constitution. *Richardson v. City of New York*, No. 12-CV-2545 (WHP), 2013 WL 2124176, at *2 (S.D.N.Y. Apr. 17, 2012) (internal quotation marks and citation omitted).

6

Accordingly, the Court dismisses any claims under Section 1983 that Plaintiff brings based upon a purported right to be provided with safe and sanitary housing, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.      Claims under Section 1983 against HPD and NYCHA**

The Court must dismiss Plaintiff's claims of federal constitutional violations, brought under Section 1983, against HPD and NYCHA. HPD is an agency of the City of New York; it is not a separate entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Chelsea Hotel Owner LLC v. City of New York*, No. 21-CV-3982 (ALC) (RWL), 2022 WL 4625446, at *5 (S.D.N.Y. Sept. 30, 2022); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses all of Plaintiff's claims brought against HPD for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but, as explained in the next paragraph, will construe them as claims brought against the City of New York.

The Court construes Plaintiff's claims brought against HPD as brought against the City of New York. When a plaintiff sues a municipality or other local governmental entity, such as the City of New York or NYCHA,[3] under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's or other local governmental entity's employees or agents engaged

---

[3] NYCHA, a named defendant, is not a New York City agency. It is a public benefit corporation created by New York State law, and it has the capacity to be sued. N.Y. Pub. Hous. Law §§ 37(1)(s), 401. The liability standard applied to claims under Section 1983 brought against NYCHA is the same standard applied to those brought against the City of New York. *See Carrero v. N.Y.C. Hous. Auth.*, 890 F.2d 569, 576-77 (2d Cir. 1989).

in some wrongdoing. The plaintiff must show that the municipality or other local governmental itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality or other local governmental entity, the plaintiff must allege facts showing: (1) the existence of a municipal or other local governmental entity policy, custom, or practice; and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted). If there is no underlying constitutional violation, however, the Court need not examine whether the municipality or other local governmental entity is liable under Section 1983. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

To the extent that Plaintiff assert claims under Section 1983 against the City of New York and/or NYCHA arising from the violation of a federal constitutional right other than a purported right to be provided with safe and sanitary housing, Plaintiff does not allege any facts showing that a policy, custom, or practice of the City of New York or of NYCHA caused a violation of her federal constitutional rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against the City of New York and NYCHA for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead these claims in an amended complaint in which she names the City of

8

New York and/or NYCHA as defendant(s), and alleges facts sufficient to state a claim under Section 1983 against that/these defendant(s).

**D.      Remaining claims under Section 1983 against the individual defendants**

With respect to Plaintiff's remaining federal constitutional claims (those not involving a purported right to be provided with safe and sanitary housing) under Section 1983 against the individual defendants, it is unclear how each individual defendant has been directly and personally involved with the alleged federal constitutional violations. To state a claim under Section 1983 against an individual, a plaintiff must allege facts showing that individual's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citation omitted)). An individual defendant may not be held liable under Section 1983 solely because that individual defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a . . . [government] official liable under [Section] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Because it is not clear how each of the individual defendants have been directly and personally involved in the alleged remaining violations of Plaintiff's federal constitutional rights, the Court dismisses such claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead these claims in an amended complaint in which she names, as defendants, those

individuals who were directly and personally involved in the alleged violations of her federal constitutional rights and in which she alleges facts showing the direct and personal involvement of each individual named as a defendant.

**E.      Claims under Section 1983 regarding cancellation of Section 8 housing subsidy benefits**

Plaintiff may be asserting that her federal constitutional right to procedural due process has been violated with respect to the cancellation of her Section 8 housing subsidy benefits. "The two threshold questions in any [Section] 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest . . . and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995); *see also Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) (To state a procedural due process claim under Section 1983, a plaintiff must "demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process of law."). "The fundamental requisite of due process of law is the opportunity to be heard . . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted).

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972). Courts have regarded government-issued housing subsidies, including Section 8 housing subsidy benefits, as property interests that are subject to procedural due process protections. *See, e.g.*, *Hardee v. City of New Rochelle Section 8 Hous. Agency*, No. 18-CV-11215 (VB), 2019 WL 3564550, at *4 (S.D.N.Y. Aug. 6, 2019) (citing cases).

Where a government entity deprives a plaintiff of some property interest pursuant to an established procedure, procedural due process is generally satisfied so long as some form of hearing is provided before the plaintiff is deprived of the property interest. *See Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). By contrast, a government official's random and unauthorized act does not violate procedural due process if a meaningful post-deprivation remedy is available; when the government cannot predict precisely when the loss of the property interest will occur, it would be impossible to provide a meaningful hearing before the deprivation of the property interest. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1986); *Parratt v. Taylor*, 451 U.S. 527, 540-43 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *see also Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) ("[T]here *is no* constitutional violation (and no available [Section] 1983 action) when there is an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty."). "[I]f a plaintiff had an opportunity to contest a defendant's actions but failed to do so, [however,] there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983." *Vialez v. N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 113 (S.D.N.Y. 1991). As to such a claim, "the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts. If so, there will be no claim before the federal court, whether or not the plaintiff took advantage of the state procedure." *Id.* at 114.

With respect to government issued housing benefits, including Section 8 housing subsidy benefits, federal law and regulations require that, before a recipient of those benefits is subjected to a proposed adverse housing action, the recipient is entitled to notice of the proposed adverse action and a pre-deprivation hearing to contest the adverse action. *See* 42 U.S.C. § 1437d(k); 24 C.F.R. § 982.555(e); *Rios v. Town of Huntington Hous. Auth.,* 853 F. Supp. 2d 330, 335-36

(E.D.N.Y. 2012). If, however, a recipient is subjected to an adverse housing action due to a random and unauthorized act of a government official, federal law generally recognizes the person's ability to challenge the adverse action in a post-deprivation proceeding under state law, such as in a state court proceeding brought under Article 78 of the New York Civil Practice Law and Rules ("Article 78"), as sufficient to meet due process requirements. *See Rios*, 853 F. Supp. 2d at 339-41.

Plaintiff does not allege any facts regarding whether she was afforded notice and a pre-deprivation hearing before her Section 8 housing subsidy benefits were cancelled or, if not, whether she pursued Article 78 relief in the state courts. Thus, Plaintiff has failed to state a claim of a procedural due process violation under Section 1983, and the Court dismisses this claim for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court grants Plaintiff leave to replead this claim in an amended complaint in which she alleges facts sufficient to state a claim under Section 1983 that she was denied procedural due process regarding the cancellation of her receipt of Section 8 housing subsidy benefits. If Plaintiff chooses to file an amended complaint, she should indicate: (1) the manner in which she was denied such benefits or how such benefits were discontinued; (2) any and all efforts, both administratively (within NYCHA) and within the state courts (such as via an Article 78 procedure), that she has made to challenge the cancellation of such benefits; and (3) how she was denied procedural due process, or how such process was inadequate. In addition, Plaintiff must name as a defendant, in her amended complaint, any individual government official directly and personally responsible for cancelling those benefits without due process. *See Tangreti*, 983 F.3d at 620.

**F.    Claims of disability discrimination**

The Court construes Plaintiff's complaint and supplements as also asserting claims of disability discrimination under the Rehabilitation Act, Title II of the ADA, and the FHA,

12

specifically, that the defendants have discriminated against Plaintiff based on her disability by not providing her reasonable disability accommodations with regard to her apartment and to the building in which she resides. Plaintiff does not, however, allege facts sufficient to state a claim under any of these statutes.

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).[4] Thus, to show that the defendant is subject to the Rehabilitation Act, "a plaintiff must show that the defendant[ ] receive[s] federal funding." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *see* § 794(a).

Title II of the ADA forbids discrimination against persons with disabilities in, among other areas of public life, public services, programs, and activities. *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[5] 42 U.S.C. § 12132. Neither the Rehabilitation Act nor Title II of the ADA, however, provides for

---

[4] For the purposes of the Rehabilitation Act, the term "individual with a disability" incorporates by reference the ADA's definition of "disability." 29 U.S.C. § 705(20)(B). Under the ADA, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C).

[5] Under the ADA, a "public entity" includes "(A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)-(B). The City of New York and NYCHA are public entities for the purposes of the ADA. *See id.*; *Anthony v. City of New York*, 339 F.3d 129, 141 n.8 (2d Cir. 2003) (City of New York); *Clark v. DMV*, No. 1:22-CV-3086 (JGK), 2022 WL 1471349, at *7 n.6 (S.D.N.Y. May 9, 2022) (NYCHA).

liability of individual defendants as to such claims. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

The FHA "broadly prohibits discrimination in housing." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Among other things, it prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of a handicap."[6] 42 U.S.C. § 3604(f)(2). "The FHA also prohibits a housing provider's 'refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling.'" *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014) (quoting § 3604(f)(3)(B)). Unlike claims of discrimination under the Rehabilitation Act and Title II of the ADA, however, "[a]ggrieved persons have long been permitted to assert [FHA] claims against individual defendants who engaged in affirmative acts of discrimination or enforced a corporation's discriminatory rules or policies." *Andujar v. Hewitt*, No. 02-CV-2223 (SAS), 2002 WL 1792065, at *10 (S.D.N.Y. Aug. 2, 2002) (collecting cases); *see supra* at 13-14.

To state an FHA failure-to-accommodate claim, a plaintiff must allege facts showing:

(1) that the plaintiff . . . [has a disability] within the meaning of [the FHA]; (2) that the defendant knew or reasonably should have been expected to know of the [disability]; (3) that the accommodation was likely necessary to afford the [disabled] person an equal opportunity to use and enjoy the dwelling; (4) that the

---

[6] The definition of "disability" under the ADA and the definition of an individual with a disability under the Rehabilitation Act are nearly identical to the definition of "handicap" under the FHA. *See* 42 U.S.C. §§ 3602(h) (FHA), 12102(1) (ADA); 29 U.S.C. § 705(20)(B) (Rehabilitation Act). For the purposes of this order, the Court will use the term "disability" or "disabled" in connection with all three statutes.

14

accommodation requested was reasonable; and (5) that the defendant refused to make the requested accommodation.

*Olsen*, 759 F.3d at 156.

Courts have held that:

[b]ecause "[t]he relevant portions of the FHA, ADA, and . . . the Rehabilitation Act offer the same guarantee that a covered entity, such as a public housing authority, must provide reasonable accommodations in order to make the entity's benefits and programs accessible to people with disabilities," "analysis of a reasonable accommodation claim under the three statutes is treated the same."

*Logan v. Matveevskii*, 57 F. Supp. 3d 234, 253 (S.D.N.Y. 2014) (Karas, D.J.) (quoting *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 337 (E.D.N.Y. 2012)).

With respect to claims of failure to provide reasonable accommodations under the Rehabilitation Act and Title II of the ADA, "where an individual challenges 'the substance of the services provided'—rather than 'illegal discrimination'—there is no ADA [or Rehabilitation Act] violation." *Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021) (quoting *Doe v. Pfrommer*, 148 F.3d 73, 84 (2d Cir. 1998)). Thus, a plaintiff does not state a claim of disability discrimination under the Rehabilitation Act or under Title II of the ADA when she "attack[s] the adequacy of the services provided." *Greene v. City of New York*, 773 F. Supp. 3d 94, 110 (S.D.N.Y. 2025) (Preska, D.J.) (citing cases). The same is true with respect to such claims under the FHA. *See Forziano v. Indep. Grp. Home Living Program, Inc.*, No. 13-CV-0370, 2014 WL 1277912, at *9 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 613 F. App'x 15 (2d Cir. 2015) (summary order).

The Court will assume, for the purposes of this order, that Plaintiff has a disability as defined by all three statutes, and that both the City of New York (the proper defendant with respect to Plaintiff's claims against HPD) and NYCHA receive federal funding. Plaintiff's complaint and supplements, however, do not allege facts sufficient to show that any of the defendants (institutional or individual) have discriminated against her, especially given

15

Plaintiff's allegations about the attempts made to repair her apartment and the building elevator, although such attempts may have been insufficient, inadequate, and unsatisfactory to Plaintiff. The claims based on these allegations only challenge the adequacy of the services provided to accommodate Plaintiff's disabilities and thus do not state a reasonable-accommodations claim under either the Rehabilitation Act, Title II of the ADA, or the FHA. *See Tardif*, 991 F.3d at 405; *Greene*, 773 F. Supp. 3d at 110; *Forziano*, 2014 WL 1277912, at *9. Accordingly, the Court dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in an amended complaint in which she alleges facts sufficient to state reasonable-accommodations disability discrimination claims under the Rehabilitation Act, Title II of the ADA, and the FHA.

### G.      Application for the Court to Request *Pro Bono* Counsel

The Court must deny Plaintiff's application for the court to request *pro bono* counsel. The IFP statute, 28 U.S.C. § 1915, provides that courts "may request an attorney to represent any person unable to afford counsel." § 1915(e)(1). Unlike in criminal actions, in civil actions, there is no requirement that courts supply indigent litigants with counsel. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). Instead, courts have "[b]road discretion" when deciding whether to grant an indigent litigant's request for *pro bono* representation. *Id.* Moreover, courts do not have funds to pay counsel in civil matters. Courts must therefore grant applications for *pro bono* counsel sparingly, and consider public benefit in making their decisions regarding such applications, in order to preserve the "precious commodity" of volunteer-lawyer time for those litigants whose causes are truly deserving. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Hodge*, the United States Court of Appeals for the Second Circuit set forth the factors a court should consider in deciding whether to grant an indigent litigant's request for *pro bono*

16

counsel. 802 F.2d at 61-62. Of course, the litigant must first demonstrate that she is indigent, for example, by successfully applying for leave to proceed IFP. The court must then consider whether the litigant's claim "seems likely to be of substance"—"a requirement that must be taken seriously." *Id.* at 60-61. If these threshold requirements are met, the court must next consider such factors as:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues[,] and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Id.* at 61-62; *see also Cooper*, 877 F.2d at 172 (listing factors courts should consider, including litigant's efforts to obtain counsel). In considering these factors, district courts should neither apply bright-line rules nor automatically deny the request for counsel until the application has survived a dispositive motion. *See Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Rather, each application must be decided on its own facts. *See Hodge*, 802 F.2d at 61.

In light of the defects mentioned above with respect to Plaintiff's claims, the Court denies Plaintiff's application for the court to request *pro bono* counsel. Because of Plaintiff's *pro se* status, however, the Court denies this application without prejudice to Plaintiff's filing another such application at a later stage of the litigation, that is, after she has filed an amended complaint as specified in this order.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to

17

amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid claims under Section 1983, the Rehabilitation Act, Title II of the ADA, and/or the FHA, the Court grants Plaintiff 60 days' leave to file amended complaint as specified in this order. Plaintiff may not replead any claims in her amended complaint that the Court has not granted her leave to replead above.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide **a short and plain** statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any defendant named, she must provide it. Plaintiff should include all of the information in the amended complaint that she wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a)  the names and titles of all relevant people;

b)  a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c)  a description of the injuries Plaintiff suffered; and

d)  the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated her federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint and supplements, any facts or claims that Plaintiff wants to include from the original complaint and supplements must be repeated in the amended complaint.

While the Court will not, at this time, impose a page limitation on Plaintiff's amended complaint, **the Court does find that Plaintiff's original complaint and supplements fall far short of complying with Rule 8's requirement that a complaint include a <u>short and plain</u> statement of claim.** *See* Fed. R. Civ. P. 8(a)(2). The Court therefore directs Plaintiff to file an amended complaint that has **a short and plain** statement of claim stating the facts that are the basis of her claims, as specified above. While Plaintiff may attach **some supporting** documentation to her amended complaint (a few pages, not hundreds), those attached documents, by themselves, are not the amended complaint's statement of claim; Plaintiff herself must set forth her allegations in her amended complaint's statement of claim. Plaintiff's amended complaint must also comply with Rule 5.2 of the Federal Rules of Civil Procedure with respect to revealing an individual's personal information, such as a person's birth date. *See* Fed. R. Civ. P. 5.2(a). If Plaintiff files an amended complaint that does not comply with that rule, the Court will deny her application to proceed on that proposed amended complaint and direct the Clerk of Court to strike it from the court's docket of this action.

## CONCLUSION

The Court grants Plaintiff leave to replead her claims, as specified above, in an amended complaint to be filed within 60 days of the date of this order. An amended complaint form is attached to this order.

The Court denies Plaintiff's application for the court to request *pro bono* counsel (ECF 6) without prejudice to Plaintiff's filing another such application at a later stage of the litigation. The Court therefore directs the Clerk of Court to terminate ECF 6.

If Plaintiff fails to file an amended complaint within the time allowed, the Court will dismiss this action. The Court will dismiss Plaintiff's federal-law claims for the reasons set forth in this order. The Court will also decline to consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:    May 11, 2026
          New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

20